**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MARY SINGLETON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-CV-785-GKF-PJC |
| v. | ) | |
| | ) | |
| PROGRESSIVE DIRECT INSURANCE | ) | |
| COMPANY, a foreign not for profit insurance | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the court upon the Motion to Remand of the plaintiff, Mary
Singleton ("Singleton"). [Dkt. #14]. For the following reasons, Singleton's motion is denied.

**I.      Background**

Singleton was involved in an automobile accident with an underinsured motorist on
September 29, 2011, sustaining severe injuries as a result. At the time of the collision, Singleton
was insured under an insurance contract with defendant Progressive Direct Insurance Company
("Progressive"), which was to provide Singleton with up to $100,000 in uninsured/underinsured
motorist ("UIM") coverage and $10,000 in medical payments ("Medpay") coverage. After the
accident, Singleton submitted both UIM and Medpay claims to Progressive. In November 2012,
after incurring significant medical expenses while Progressive investigated her claims, Singleton
demanded payment from Progressive in the full amount of her UIM policy benefits. On July 3,
2013, Singleton filed a petition in Tulsa County District Court bringing claims against
Progressive for breach of contract and breach of the duty of good faith and fair dealing with

respect to her UIM claim [Dkt. #2-2], though Progressive tendered payment to Singleton in the amount of $100,000 that very day.

When Singleton continued to pursue the action after receiving the $100,000 payment, Progressive removed this action from state court, asserting diversity jurisdiction. [Dkt. #2]. Singleton promptly filed her motion to remand, asserting, without disputing that complete diversity exists between the parties, that Progressive had not established jurisdictional facts showing that the amount in controversy exceeds the jurisdictional limit of $75,000. [Dkt. #14]. In particular, Singleton acknowledges receiving the $100,000 UIM benefits payment and argues that this amount can no longer be considered in controversy. [*Id.* at 2–3]. In response, Progressive argues that it is entitled to rely on Singleton's November 2012 demand for payment to the full extent of coverage under her UIM policy, even though the demand predates Progressive's July 2013 payment. [Dkt. #22, p. 11.] Progressive further argues that Singleton's request for punitive damages independently establishes that the amount in controversy exceeds $75,000. [*Id.* at 12–14].

On the same day Singleton filed her motion to remand, she filed a second petition in Tulsa County District Court asserting claims against Progressive ("*Singleton II*"). This petition likewise raised a claim for breach of contract and breach of the duty of good faith and fair dealing, but this time, with respect to her Medpay benefits. In an apparent effort to prevent removal, Singleton took care to specify that the relief she seeks in the latter claim would not exceed $75,000. [Dkt. #30-1, p. 6]. After Progressive tendered payment to Singleton ostensibly representing the balance of her available Medpay coverage, Singleton filed an amended petition in Tulsa County District Court which nevertheless asserted that Progressive "has still yet to pay said benefits" to Singleton. [Dkt. #30-3, ¶ 12]. Progressive subsequently filed a motion to

dismiss *Singleton II*, arguing that Singleton improperly split claims to avoid this court. An electronic report generated by the Oklahoma Court Information System shows that on the day before Progressive's motion was to be heard, Singleton dismissed her action without prejudice.

In a surreply addressing Singleton's motion to remand, Progressive argues that the relief sought in *Singleton II*—which it states will "no doubt" be merged with this case—may be combined with the damages sought in this action, ensuring that the amount in controversy exceeds $75,000. [Dkt. #30, p. 10 fn. 1]. In response, Singleton insists that the two claims are distinct, and that the relief sought in *Singleton II* should not be considered in determining the amount in controversy in this action. [Dkt. #31, p. 5]. Even if the two cases were merged, Singleton nevertheless continues, Progressive would still have failed to demonstrate that the amount in controversy surpasses the jurisdictional limit, particularly where "all of the contractual benefits owed to Plaintiff have been paid; Plaintiff's damages are for the delay in providing the benefits when they were due and owing." [*Id.* at 8–9].

## II.     Discussion

A case shall be remanded to state court if at any time before final judgment it appears that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Progressive removed this action on the basis of diversity jurisdiction, which requires diversity of citizenship and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a).

To effect proper removal based on diversity jurisdiction, "[b]oth the requisite amount in controversy and the existence of diversity must be affirmatively established on the face of either the petition or the removal notice." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). "The burden is on the party requesting removal to set forth, in the notice of removal itself, the '*underlying facts* supporting [the] assertion that the amount in controversy exceeds [$75,000].'

Moreover, there is a presumption against removal jurisdiction." *Laughlin*, 50 F.3d at 873 (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir. 1992) (emphasis in original)).

Typically, the sum demanded in good faith in the initial pleading is deemed to be the amount in controversy. 28 U.S.C. § 1446(c)(2). In the absence of an explicit demand for more than $75,000, however, removing defendants must show the amount in controversy through other means, including estimates of potential damages from the allegations in the plaintiff's pleading, a proposed settlement amount, discussions between counsel, etc. *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008). In such cases, removal of the action is proper on the basis of an amount in controversy asserted in the notice of removal if the court finds, by a preponderance of the evidence, that the amount in controversy exceeds the required amount. 28 U.S.C. § 1446(c)(2)(B). Once those jurisdictional facts are proven, a removing defendant is entitled to stay in federal court so long as "it is not legally certain that the claim is less than the jurisdictional amount." *Woodmen of the World Life Ins. Soc'y. v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003).

Here, the parties do not dispute the existence of complete diversity. The sole question to be resolved, then, is whether Progressive has proven, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional limit of $75,000. Singleton's petition does not make an explicit demand for a specific sum, but instead alleges that she has suffered damages "in excess of ten thousand dollars."[1] [Dkt. #2-2, ¶ 25]. Removal of this action

---

[1] The Oklahoma legislature recently amended the requirements of the Oklahoma pleading code to require parties to state in their plea for relief whether more or less than the federal jurisdictional limit is sought. Okla. Stat. tit. 12, § 2008(A)(2). The amendment is less than perfectly written, unfortunately. For example, the revised statute allows claimants who seek more than the jurisdictional limit to set forth only that the amount sought exceeds that limit, apparently contradicting a subsequent requirement that every pleading seeking either the "amount that is required for diversity jurisdiction . . . or less" to specify the amount of damages sought. *Id.* There is nevertheless no indication whether Singleton attempted to comply with these revised requirements, in spite of their imperfections, or whether Progressive attempted to avail itself of its rights under Okla. Stat. tit. 12, § 2009(H) to require Singleton to show that damages, if awarded, would not exceed the amount required for diversity.

therefore hinges on a finding by this court by a preponderance of the evidence that the amount in controversy exceeds $75,000.

   *1) Singleton's Breach of Contract Claim*

   In its notice of removal, Progressive first argues that Singleton's breach of contract claim itself has value in excess of $75,000, relying particularly on Singleton's pre-suit demand seeking recovery to the utmost limits of the UIM policy. [Dkt. #2, p. 6]. It is undisputed, however, that Progressive has already paid Singleton $100,000, the full extent of coverage under her UIM policy. Though Singleton's petition, filed on the day Progressive issued this payment, alleges that "Progressive has failed to tender benefits under the applicable policy of insurance," [Dkt. #2-2, ¶ 16], her subsequent filings acknowledge receipt of the July 2013 payment. [*See, e.g.*, Dkt. #14, p. 2]. Progressive nevertheless argues that where Singleton has not dismissed her breach of contract claim, the full value of the UIM benefits under the contract—no less than $100,000—remains at issue. [Dkt. #22, p. 17].

   Where Singleton has already received Progressive's payment of $100,000 for the UIM benefits under her policy, however, she cannot seek to recover that amount again, and indeed, she does not claim to do so. The value of Singleton's breach of contract claim, then, must exclude the value of UIM policy benefits Progressive has already paid. The value of the claim is instead limited to damages resulting from Progressive's alleged failure to "pay policy benefits in a timely manner and to perform a reasonable valuation of [Singleton's] claim." [Dkt. #25, p. 6 fn. 3]. Singleton's petition does not assign a specific value to these damages, and Progressive provides no facts in its notice of removal to suggest that the value of this portion of her claims

- 5 -

even remotely approaches $75,000.[2]  Singleton's breach of contract claim therefore does not independently satisfy the amount-in-controversy requirement.

### 2) *Punitive Damages*

But Progressive also notes that Singleton seeks punitive damages for the tort of bad faith, and argues that the act of alleging punitive damages places the amount in controversy beyond the jurisdictional limit.  [Dkt. #2, pp. 7–9].  "Punitive damages may be considered in determining the requisite jurisdictional amount."  *Woodmen of the World Life Ins. Soc'y.*, 342 F.3d at 1218. Because Singleton's petition states only that she seeks "punitive damages in excess of ten thousand dollars," [Dkt. #2-2, p. 6], the court must once again determine by a preponderance of the evidence whether the actual value of punitive damages places the amount in controversy above $75,000.  28 U.S.C. § 1446(c)(2)(B).

It is not disputed that punitive damages are sought and that Oklahoma law allows, at the very least, for recovery for punitive damages in an amount not to exceed the greater of $100,000 or the amount of actual bad-faith damages.  *See* 23 O.S. § 9.1(B).[3]  A defendant must nevertheless offer more than a "conclusory statement" that punitive damages are sought under Oklahoma law and that such law authorizes recovery in excess of that jurisdictional amount. *Herndon v. American Commerce Ins. Co.*, 651 F.Supp.2d 1266, 1273 (N.D. Okla. 2009).  To hold otherwise would require courts "to conclude that every civil action asserting a punitive

---

[2] In fact, in her surreply to Progressive's surreply, Singleton goes so far as to insist that "[t]he amount in controversy in this case are the damages caused by Progressive's breach of its duty of good faith and fair dealing in its handling of [Singleton's] *UIM* claim."  [Dkt. #31, p. 4].  Her breach of contract claim, she thus appears to suggest, has little, if any, inherent value; it is merely a component of her claim for bad faith, which "*necessarily includes* a claim for breach of contract because the duty of good faith and fair dealing *is a contractual obligation*."  [*Id.* at 4 fn. 1] (emphasis in original).  It is expected, of course, that Singleton's apparent belief in the merely nominal value of her breach of contract claim will endure beyond resolution of the question of diversity jurisdiction.

[3] Progressive suggests that the facts of Singleton's petition could implicate a higher category of punitive damages, and thus allow an award in an amount not to exceed the greater of $500,000 or double the actual damages awarded. [Dkt. #2, pp. 8–9, citing 23 O.S. § 9.1(C)]. Because the parties do not dispute that the maximum potential recovery of punitive damages applicable in this case would allow for damages exceeding the jurisdictional limit, however, it is unnecessary to determine at this time which category of punitive damages would be appropriate here.

damages claim under Oklahoma law necessarily satisfies the amount in controversy requirement
. . . simply because the maximum potential recovery exceeds $75,000." *Id.* (quoting *DKNP,
LLC. v. Hartford Cas. Ins. Co.*, No. 06-CV-632-JHP, 2007 WL 120726, at \*4 (N.D. Okla. Jan.
10, 2007). Instead, as previously stated, the removing defendant must "affirmatively establish[]"
the requisite amount in controversy by "set[ting] forth . . . the '*underlying facts* supporting the
assertion that the amount in controversy exceeds [$75,000].'" *Laughlin*, 50 F.3d at 873 (quoting
*Gaus*, 980 F.2d at 567 (emphasis in original)).

Considering the petition and notice of removal together, the court finds that Progressive
has not merely offered a "conclusory statement" invoking punitive damages, but has
affirmatively established that the amount in controversy exceeds the jurisdictional limit. Where
Singleton asked for actual damages exceeding $10,000, a punitive damages award of $65,000 or
more would reach the jurisdictional threshold. This would require no more than a single-digit
ratio of punitive damages to actual damages, even after Progressive deflated the denominator
with a $100,000 payment just prior to the initiation of this action. *See State Farm Mut. Auto. Ins.
Co. v. Campbell*, 538 U.S. 408, 425 (2003) (holding that "few awards exceeding a single-digit
ratio between punitive and compensatory damages, to a significant degree, will satisfy due
process," though even greater ratios may still comport with due process where "a particularly
egregious act has resulted in only a small amount of economic damages"). Singleton's petition,
meanwhile, alleges that Progressive failed to properly investigate her claims, delayed payments
or withheld them altogether, and used its unequal bargaining position to overwhelm and take
advantage of her, though it knew that she was entitled to receive $100,000 in UIM benefits under
her policy. [Dkt. #2-2, p. 5]. These allegations supply the required underlying facts supporting

Progressive's assertion that the value of Singleton's claim for punitive damages exceeds the amount required to surpass the jurisdictional threshold.

The court therefore finds that Progressive has shown by a preponderance of the evidence that Singleton's claim for punitive damages, particularly when considered along with her request for actual damages, places an amount exceeding $75,000 in controversy.

3) *Collective Claims of Singleton I and II*

Finally, in its surreply, Progressive argues that the combined requests for relief in this case and in *Singleton II*, which Progressive insists raises an identical cause of action and must be heard in this court, collectively satisfy the amount-in-controversy requirement. [Dkt. #30, pp. 4, 9–11]. Singleton nevertheless insists that the claims are distinct, and that even if the two cases were combined, the total amount in controversy still would not exceed $75,000 because Progressive has paid the full amount of the contractual limits of both the UIM and Medpay policies. [Dkt. #31, pp. 5, 9]. Because the value of Singleton's requests for actual damages and punitive damages in connection with her UIM claim exceeds the jurisdictional limit on its own, however, it is not necessary to speculate on the effect of the Medpay-related claim for the purposes of determining whether this court has jurisdiction over the instant case.

For the foregoing reasons, the court finds that Progressive has satisfied its burden to show that the requisite jurisdictional amount of $75,000 is in controversy.

III.   Conclusion

WHEREFORE, Singleton's Motion for Remand, including her request for attorneys' fees [Dkt. #14], is denied.

DATED this 9th day of September, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT